## JEREMIAH CANNING AND WIFE,

*versus*

## JOSEPH PINKHAM AND OTHERS.

An inhabitant of a town is a competent witness, though the town are parties in
  interest, and call him to testify in their favour.
A deed, which purports to convey a farm " of 104 acres" in the following man-
  ner, viz. " 24 acres of land in the farm I now live on to R. W. jr., to be in
  common and undivided : 6 acres to A. M., to be in common and undivided :
  and the remainder of said farm with the buildings to J. W." is not void for
  uncertainty in the description of the interest conveyed.
What amounts to a valid delivery of a deed.

THIS was a writ of entry. The demandants counted on
their own seizin in right of the wife.

At September term, 1817, the tenants vouched in their
warrantors, the town of *Dover ;* and at February term, 1818,
the vouchees, appearing by their attorney, assumed the de-
fence and pleaded the general issue.

On the trial it was admitted that the title to the demand-
ed premises was once in *Richard Waldron ;* and that in Au-
gust, 1811, he died intestate, leaving five children, of whom
*Mary*, the wife of *Jeremiah Canning*, was one.—As the
demandants wished to recover only an undivided fifth part
of the land, they rested their case on this admission.

The vouchees then offered in evidence a deed of the pre-
mises, dated and acknowledged June 11th, 1811, and re-
corded Sept. 14th, 1811 ; in which said *Richard* was the
grantor, and *Job Waldron, Richard Waldron*, jr. and *Abi-
gail M'Afee*, the grantees. The description of the estate
conveyed was—" 24 acres of land in the farm I now live
on to R. W. jr., to be in common and undivided ; 6 acres
to A. M'A., to be in common and undivided ; and the
remainder of said farm, with the buildings, to J. W."—The
boundaries of the farm were then given, and the quantity of
land was stated to be " 104 acres." The *habendum* ran to
all the above grantees and their heirs, with a separate war-
ranty to each. The execution of the deed was disputed, and
*John Waldron*, Esq., a subscribing witness, being called by
the vouchees, though objected to because an inhabitant of
*Dover*, was admitted to testify in relation to this fact. On

the cross-examination it appeared that he was brother to *Richard Waldron*, the grantor, who, in June, 1811, was in ill health, and sent for him to draw some writings for the final settlement of his estate among his children : That in pursuance to the direction of *Richard*, the above deed was written rather than a will, because *Richard* thought it could less easily be impeached by the demandants, whom he intended to disinherit ; that after the deed was signed and acknowledged, as none of the grantees were present the witness suggested that the delivery of it to some other person might be necessary to its validity, and that in conformity to this advice a formal delivery of the deed was made to him ; but it was immediately returned, and with some other papers as to the estate, placed by *Richard* in the hands of his wife, and she was requested to keep them safe.

The demandants then read the deposition of *Moses Stevens*, who stated that in July, 1811, *Richard Waldron* and wife delivered to him a bundle of papers, sealed with an envelope, on which was written, " don't open this ;" and which bundle he supposed contained the above deed. *Waldron* requested him to keep it ; and added, that he should soon be gone, when his wife would inform him what disposition was to be made of the papers. At the funeral of W. he delivered the bundle to the widow.

Mrs. *Waldron* being called, testified that she received from her husband no particular directions concerning the papers, and when *Stevens* returned them, that they were delivered by her to *Job Waldron*, one of the grantees.

*Elihu Hayes* swore, that after the funeral of *R. W.*, when all his children were present, the bundle of papers was brought into the room by the widow, and that he, having broken the seal, read them to those assembled.

The demandants objected to the admission of the deed to the jury, on account of the uncertainty in the description of the estate conveyed to each grantee ; and they also contended that the testimony was insufficient to show a legal delivery of the deed.

The deed, however, was permitted to go to the jury ; and as it was agreed that the grantees had conveyed to the town of *Dover* all their title to the land, a verdict was taken for the vouchees, subject to the opinion of the court on the validity of any of the above exceptions.

Canning & wife
*vs.*
Pinkham & al.

*Bartlett* and *Mason* for the demandant.

*Hodgdon* and *J. Smith* for the vouchees.

* WOODBURY, J., delivered the opinion of the court.

The objection to *John Waldron* as a competent witness, on account of his being an inhabitant of *Dover*, cannot prevail. Since the trial we have had occasion to make a full examination of the principles and precedents connected with this point, and they may be seen at length in the case of *Eustis* vs. *Parker*, (see page 273.) In considering the objection as to the uncertainty of the estate which *Richard Waldron* intended to convey to his children, it ought not to be forgotten that all doubtful expressions in deeds between individuals are to be construed favourably to the grantee (1,) and that every deed is, if possible, to be made operative.— *Shep. T.* 253.—4 *M. R.* 137, 143.—7 *do.* 428, 527.—*Ch. Pl.* 241.—*Cow.* 600. *Goodlittle* vs. *Bailey.*—*Willes* 675. *Doe* vs. *Salkeld.*

(1) *Co. Lit.* 36. *a.—Bac. Gra. J.* 1.

It seems clear that the grantor intended to convey "in the buildings," a several estate to *Job Waldron.* But the situation of the particular quantities of "land" intended for each of the grantees, and the nature of the interest conveyed in those quantities, are not so obvious.—These quantities are not distinguished by separate boundaries, nor are they described as certain shares of the whole farm. The deed, however, proceeds to state that they are "in common and undivided." It is not improbable, therefore, that the grantor may have expected they would be so held ; and as the whole farm contained "104 acres," the difficulty in ascertaining the proportion of each grantee would not be insuperable.— Excluding the buildings, the proportion of *Richard*, jr. in the land would be twenty-four one hundred and fourths—

* RICHARDSON, C. J., was absent this term, from indisposition

Canning & wife *vs.* Pinkham & al. that of *Abigail* six one hundred and fourths—and that of *Job* seventy-four one hundred and fourths. After a survey, if the farm was found to contain a larger or less quantity of land, the proportions would remain in the same ratio, and would be sufficiently certain for a tenancy in common.—*Bac. Grant. H.* 3.

When we remember that in the interior of the country it is not the practice to employ professional men to write many deeds, and that the deed in this case was intended to be a substitute for a will, the circumstance does not appear unnatural, that a several estate in a part of the premises to one person, and an estate in common in the rest to him and other persons, should both be conveyed in one instrument.

But were it necessary, for the purpose of making the deed operative, to resort to a different construction, it would not be a very forced one to pass by the deed a several estate to each of the grantees. " To R. W. jr." " 24 acres of land," not bounded by the grantor, but to be " in common and undivided" till it was elected in which part of the farm to make the location of it : " 6 acres to *Abigail*" in a similar manner ; and the " remainder of the farm, with the buildings, to J. W."—Upon this hypothesis the species of estate conveyed is different : but it accords almost as well with the language used in the premises, and seems justified by good authorities.—*Co. Lit.* 145, *a.*—*Bac. Gr. H.* 3.—1 *Leon.*— 30 *Sir Walter Hungerford's case.*

Nor is it an objection to this construction, that the grantees never elected their several portions ; because, during the existence of their right to elect, a division became unnecessary in consequence of a conveyance of the whole premises to the town of *Dover*(2.) For the same reason, too, it is not material to consider whether R. jun. must elect first, or whether the election first made shall stand : though lord *Coke* observes, in *Heyward's* case,(3) " that if a man makes a lease for life of two acres, the remainder of one acre to J. S.

(2) *Co. Lit.* 145.

(3) 2 *Coke* 36.

and of the other to J. W., he who *first* makes election shall enjoy the one ' acre.' "

The exception as to the want of a delivery of the deed remains to be considered ; and our opinion in relation to it has not been formed without some hesitancy.

The very derivation of the word "deed" implies that it must be given or delivered ; (4) and though in this case the possession of the deed by the grantees would be presumptive evidence of a delivery by the grantor, yet as the mode of obtaining that possession has been explained by the witnesses, it must still be decided whether, upon all the facts, the delivery was a legal one.

It is not necessary, says *Shepard*,(5) that a deed be delivered to the grantee in person ; it " may be delivered to any stranger" " for and in the behalf and to the use of him to whom it is made."

We apprehend that the delivery is as much the act of the grantor as is the signing or sealing ; and consequently the stranger who receives it may at that time possess no authority from the grantee(2.) All that is incumbent on the grantee, in order to perfect the delivery, is that he accept, or assent to, what has been done by the grantor before the latter revokes his intention to convey(3.)

That this delivery, also, to a stranger was " for and in behalf and to the use of him to whom the deed is made," may be shown by either actions or words which evince the intent of the grantor(4.)

If we, then, compare the testimony in this case with these principles, the formal delivery of the deed to *John Waldron* seems to have been with the express intent on the part of the grantor that it should avail to the benefit of the grantees. It is true that for safe custody the deed was returned to the grantor's wife, and was afterwards deposited by them with *Stevens ;* yet the design to treat it as executed and kept till the grantor's death, for " the use" of the grantees, is apparent throughout the whole transaction. It was " in lieu of a devise to operate after his decease ;"(5) and the settlement

*Side notes:*

Canning & wife
*vs.*
Pinkham & al.

(4) 4 *Cruise* 10.
—*Cr. J.* 638.

(5) *Shep. T.* 57.

(2) 12 *Mass. R.* 461.

(3) *Shep.* 57.—12 *John.* 536.—10 *Mass. R.* 456, *Maynard* vs. *Michel.*—12 *do.* 461, *The Trustees of Phi. Ac.* vs. *Harrison.*

(4) 1 *John. C.* 253, *Goodrich* vs. *Walker.*—13 *John.* 285.—12 *do.* 42.

(5) 1 *Kaims, jr.* 118.—10 *Mass. Rep.* 458.

Canning & wife
vs.
Pinkham & al.

(6) 10 *Coke* 8.
*Pref.*—4 *Coke*
7. *Pref.*

of estates by deeds rather than by wills is, according to lord *Coke*,(6) to be encouraged. The possession of the deed by the wife and then by *Stevens*, after its delivery to *John Waldron*, furnishes no evidence that is irreconcilable with this supposition; because the wife was expressly requested to keep it with care; and it was handed to *Stevens*, with the same view, *uno intuitu*, if we regard either the directions given or the manner of its being sealed up. The actual disposition made of the deed by those with whom it had been lodged, is another strong indication of the understanding of them and the grantor, at the time of the delivery, as to the future disposition of it. Under all the circumstances, therefore, we feel justified in the opinion that in the first instance this was not the case of a deed, "delivered to a stranger without any" "declaration, intention or intimation" that it

(7) *Shtp.* 57.

was for or "to the use" of the grantees;(7) and, that in the subsequent transactions there was no evidence of a revocation of the original intent of the grantor.

This delivery, too, was afterwards ratified by the grantees; as they received the deed from those with whom it was deposited, placed it upon record, and have since conveyed the land to the vouchees.

In this view of the case the facts do not render it necessary for us to investigate the distinctions between an absolute and conditional delivery, or one in the nature of an *escrow*. But these distinctions are well discussed in *Shep. T. 58.—Perk. sec.* 143, and in the following precedents, which in many respects resemble the case under consideration.—2 *Mass. R.* 447. *Wheelwright* vs. *Wheelwright.*—9 do. *Hatch* vs. *Hatch.*—4 *Day* 66.

*Let judgment be entered on the verdict.*