## COCHECO MANUFACTURING CO. *vs.* WHITTIER.

The statute of July 2, 1831, authorizing the defendant, in all civil actions, to plead the general issue, and to give in evidence any special matter, in defence of the action, upon filing a brief statement of it, does not apply to matter in abatement of the writ, nor does it change the nature of the general issue itself.

The general issue, in a writ of entry, admits that the defendant is in possession, claiming a freehold, notwithstanding it is accompanied by a brief statement.

A deed is to be construed according to the meaning of the parties. In cases of doubt, arising from the ambiguity of the language, the construction is to be favorable for the grantee. So of the construction of an exception, or reservation, in a deed.

Where any thing is granted, whatever is essential to the enjoyment of it passes as an incident. And so of things reserved.

But, where the owner of an acre of land, adjoining a river, and upon which one end of a dam abutted, conveyed the land by metes and bounds, and the water privilege, reserving only to himself the privilege of drawing such a portion of water from the pond as might be necessary to full such quantity of cloth as he might have occasion for, or for fulling skins ; and it appeared that there was then no mill in existence there for that purpose, and that the grantor owned no other land in the vicinity ; but there was other land adjacent, owned by third persons, upon which a fulling mill might be conveniently erected, and the water drawn to it through the premises conveyed—*Held* that a right to erect a mill, upon the land conveyed, was not included in the reservation.

WRIT OF ENTRY, wherein the plaintiffs demanded 2000 square feet of land, being all the land covered by a two story building, heretofore occupied as a carding and fulling mill. The defendant filed the general issue, and a brief statement, setting forth that on the 24th of February, 1819, the defendant was seized of the demanded premises, with other land included in certain specified boundaries, and of all the right which Winthrop Watson and Winthrop Watson, jr. on the first of February, 1819, had to the dam half way over the Cocheco river, with all the privileges, &c.—and that on said 24th of February the defendant conveyed by deed to John Williams and Isaac Wendell the aforedescribed premises, reserving for himself the privilege of drawing such portion of water from the pond as might be necessary to

full such quantity of cloth as he might have occasion for, or for fulling skins—that the defendant is now entitled to have and possess all the privileges mentioned in said reservation, and whatever is of necessity requisite for the due enjoyment of the same—that for the due enjoyment of his said right it was necessary to build at the outlet of said pond, or near thereto, a mill for the purpose of fulling cloth and skins—that the defendant has built there, on the plaintiffs' land, a mill sufficient for said purposes—that he has not occupied any more of said land than was necessary for the due enjoyment of said rights—and that he does not claim to own said land, or any interest in any part thereof, any farther than may be of necessity requisite for the due enjoyment of his said rights.

It appeared in evidence, that on the 24th of February, 1819, there being then a dam across said Cocheco river, at Waldron's falls, so called, in Dover, the defendant, being the owner of an acre of land adjoining said falls, and on which one end of said dam was placed, conveyed said land to John Williams and Isaac Wendell, by a deed containing the following description, and reservation, to wit. :—" A certain piece or parcel of land, with a water privilege, described and bounded as follows, viz. : beginning by Cocheco river, on the southerly side of said river, at a place called Watson's and Waldron's mills, a little westerly of a point of rocks, westerly of the bridge, and running south," &c. (setting out the boundaries) " together with a privilege in the dam, half the way across the river, together with a right to pass and repass," &c., " being all that land, and mill privilege, which said Winthrop Watson and Winthrop Watson, jr., conveyed to me by deed bearing date the first day of February, 1819, reserving only, for myself, the privilege of drawing such a portion of water from said pond as may be necessary to full such quantity of cloth as I may have occasion for, or for fulling skins." Williams and Wendell conveyed all their right to the Dover Manufacturing Company, who conveyed to the plaintiffs.

Cocheco Man. Co. *v.* Whittier.

About the year 1828 the defendant erected a mill upon said acre of land, which he has since used for the purpose of fulling cloth and skins, and also for carding wool, and he has drawn the water from said dam for the use of the same ; and it is for the recovery of the land covered by this mill that this action is brought. The defendant did not own at the time, nor has he since owned, any other land upon that side of the river, upon which a mill could be built and used ; but there was land situate just below, belonging to third persons, upon which a mill might be erected, and supplied with water from the dam by conveying it through this piece of land.

The defendant is a clothier, and has, at times, cloth to dress ; and the supply of water in the pond is so great that it often runs over the dam, and did so about the time of the conveyance by the defendant.

For about fifty years previous to the time when the defendant erected his mill, there had been no mill on that side of the river ; but there had been, during all that time, mills upon the other side of the river, connected with the dam, and the water of the river had been used, during that period, to carry those mills. The plaintiffs are the owners of those mills, and have all the rights of the former owners.

A verdict was taken for the plaintiffs, by consent, judgment to be rendered thereon, or for the defendant, according to the opinion of this court.

*Woodman*, (with whom was *Hale*,) for the defendant. The intention of the parties to the deed of the defendant to Williams and Wendell must govern this case. If it can be inferred from the deed, and the situation and circumstances in which the parties then stood, that they intended the defendant should have the privileges which he now claims, he is entitled to judgment. The reservation puts Williams and Wendell in the light of grantors, and if so it must be con-

strued most strongly against them. *Co. Litt.* 170, *a ; Com. Dig., Fait. E,* 5.

All grants, nothing to the contrary appearing, must be viewed as having been predicated of the existing state of things, and rights of the parties, and not of any future and uncertain condition. If A grants part of a field to B, to which B can have no access except over land of A, or of third persons, he shall have it over land of A, although it is quite probable that he could purchase a more convenient way of the third persons. *Com. Dig., Chimin, D,* 3 ; 14 *Mass. R.* 49, *Gayetty* vs. *Bethune, dictum* of Parker, C. J. This way is either implied in the grant, or is a way of necessity ; and perhaps in most cases what is called a way of necessity may be considered as passing by an implied grant.

This reservation is legal, and must be so extended as to include every thing which is necessary to its enjoyment. 4 *Kent's Com.* 468, *n, a, cites* 1 *Leigh's Vir. R.* 297.

In *Allen* vs. *Scott,* 21 *Pick. R.* 29, it is adjudged that " when property is granted, all that is necessary to the enjoyment of that grant is necessarily granted, as incident to the express grant ; and that the same rule of construction applies to an exception in a grant." That in a grant ' excepting the brick factory,' the grantor did not pass his title to the land on which the factory stood and the water privilege appurtenant thereto.

In the case at bar, the dam abutting on the land granted, the defendant could draw the water from the pond only on that land. He reserved not only the privilege of drawing this water, but it was " to full such cloth and skins as he should have occasion for." After that grant, he owned no land on which he could so full the cloth and skins. He had no legal mode in which to carry on that process, except on the land granted. The presumption that he could and should purchase land for that purpose, is unnecessary and unwarranted, when, by a due and legal construction of his

reservation, he could enjoy all his reserved privileges on the land so granted.

With regard to the other point, we believe it too well settled to need authorities to be cited, that where there is a surplus of water unoccupied, the owner of the adjacent land has the right to the use of it, or at least one half of it ; and the defendant, as owner of the land, enjoyed such right.

*Bartlett & Christie,* for the plaintiffs.

PARKER, C. J. It is not perfectly clear that the defendant could maintain his defence under these pleadings, even *if his* construction of the deed was correct. It has been fully settled that the general issue, pleaded in a writ of entry, admits the defendant to be in possession, claiming a freehold. 8 *N. H. Rep.* 477, *Sperry* vs. *Sperry* ; 9 *N. H. Rep.* 168, *Gibson* vs. *Bailey.* The statute of July 2, 1831, authorizing the defendant, in all civil actions, to plead the general issue, and to give in evidence any special matter in defence of the *action,* upon filing a brief statement of it, does not apply to matter in abatement of the writ, nor does it purport to change the nature of the general issue itself. It merely authorizes matter to be given in evidence under it, *in certain cases,* which could previously have been offered only upon being specially pleaded. It does not, therefore, take away the admission which is made by a plea of the general issue, in a real action, that the defendant is in possession, claiming a freehold. This is further apparent from the fact, that the party who has filed a brief statement is not bound to prove or rely upon any thing contained in it, but may resort to any proof, in defence, which he could have offered under the general issue alone ; and the action may be tried as if the brief statement had never existed. The effect of the plea, and whether it admits the defendant to be in possession claiming a freehold, is, certainly, not to be determined by the shape which the defendant finally

concludes to give to his defence, upon the trial ; nor upon the question whether he has offered any thing in evidence under his brief statement, or which he could not have offered under the general issue alone.

There is a distinction between an exception, and a reservation. The former, it is said, is always of a part of the thing granted, but the latter is of a thing not *in esse*, but newly created or reserved. *Co. Litt.* 47, *a ; Shep. Touch.* 80 ; 3 *Wend. R.* 635, *Case* vs. *Haight*. If the defendant was correct, in his construction of the deed, a question might arise whether the interest he claims was founded upon an exception, or upon a reservation. If the clause upon which he relies was, technically, an exception, by which he had the right to erect a building upon the land, it might, perhaps, be held that he was not only entitled to draw the water necessary for the use of it, but that he possessed a fee simple in the land itself, occupied by the building.

In *Allen* vs. *Scott*, 21 *Pick. R.* 25, cited for the defendant, the factory was excepted, and it was held that the land did not pass ; and in *Gibson* vs. *Brockway*, 8 *N. H. Rep.* 465, the grant of one half of a mill was held to pass an undivided moiety of the land upon which it was situated. Notwithstanding the language of the deed is, " reserving only to myself," &c., if this could be construed to be an exception of so much of the land as a building to be erected should occupy, the defendant, when the part excepted was legally designated, (9 *Johns. R.* 100 ; 9 *Cowen's R.* 279,) would be owner, in fee, of that part, because thus far the conveyance had no operation ; and in that case he might well defend his right under the general issue.

But if by the deed the whole land included in the boundaries in fact passed to the grantees, and the defendant had reserved only the right to place a building upon the premises conveyed, to be used for certain purposes, with a right to draw water for those purposes, as it seems to be admitted in

the brief statement and argument, the right, according to the language of the deed, might not only be limited to himself, but it would not constitute an estate of freehold. It would be a mere easement, the defendant, by the reservation, carving out a right of occupation, if he pleased, for certain purposes, but retaining no right to use the premises for any other purposes, and of course no right to draw the water for other purposes. The quantity is to be measured by his necessities for specified objects; and it would seem, therefore, that the use could not be changed in the outset, whatever might be the case afterwards. The grantees, in this view of the case, would take a fee simple in the whole, and have a right to make any use of any part of the land, not inconsistent with the use reserved to the defendant. If such was the right of the defendant, he should have pleaded non tenure special, in abatement. 2 *N. H. Rep.* 442, *Brown* vs. *Miltimore ;* 13 *Mass. R.* 216, *Alden* vs. *Murdock.*

But no question has been made upon the pleadings, and it is not necessary to consider this matter farther. If the defendant's right is, not to place a building upon the land and to enter into possession of it, but merely to draw water through it, he cannot maintain his defence under any plea.

A deed is to be construed according to the meaning of the parties. " *Quoties in verbis nulla est ambiguitas, ibi nulla expositio contra verba expressa fienda est.*" 2 *Saund. R.* 167. In cases of doubt, arising from the ambiguity of the language, it seems to be well settled that the construction is to be favorable for the grantee. *Shep. Touch.* 87 ; 3 *Bos. & Pul.* 403, *Dann* vs. *Spurrier ;* 9 *East's R.* 15, *Doe* vs. *Dixon ;* 4 *Mass. R.* 205, *Worthington* vs. *Hylyer ;* 16 *Johns. R.* 172, *Jackson* vs. *Troup.* And there is no distinction, in this respect, between the language of the grant itself, and that of any exception or reservation contained in it. 10 *Co.* 107, *Humfrey Lofield's case ;* 3 *Dyer* 376, *b ;* 1 *Plowd.* 171 ; *Shep. Touch.* 100 ; 2 *Saund. R.* 166, *Lanyon* vs. *Carne ; Yelverton* 89, *Smith* vs. *Newsam ;* 4 *Taunt.*

*R.* 316, *Windham* vs. *Way* ; *Com. Dig., Fait. E,* 5 ; 3 *Johns. R.* 375, 387, *Jackson* vs. *Hudson ;* 8 *Johns. R.* 406, [308, 2*d ed.*] *Jackson* vs. *Gardner ;* 11 *Johns. R.* 191, *Jackson* vs. *Lawrence ;* 3 *Wend. R.* 636 ; 4 *Verm. R.* 622, *Putnam* vs. *Smith.* If there was well founded doubt here, arising from the terms used to express the meaning of the parties, the principle of the authorities just cited would require us to give a construction favorable to the grantees, and not to the grantor, as he has contended. And that such construction must be adverse to him seems to be admitted.

But, upon the language of the deed itself, we find no ambiguity. Nor does any arise from such extraneous circumstances as appear in the case. The clause in question reserves to the grantor the right of drawing from the pond such a portion of the water as may be necessary for fulling cloth or skins. This is clear enough, except as to the quantity, which is to be determined by the business of the defendant. The reservation is of a right to draw water, and nothing more. There is nothing about the erection of a building upon the land, or any possession of it, except so far as the drawing of water from the pond is concerned. If the defendant, at the time, had been the owner of land adjoining, upon which he had erected, or was then erecting a fulling mill, no one would have entertained a doubt what was the meaning of the parties. No one could have thought of contending for the right now claimed in the defence. If he had been, at that time, the owner of land immediately adjoining the acre conveyed, upon which a mill might conveniently have been erected, it could hardly have admitted of a question.

If the reservation extends beyond the mere right of drawing water, it must be, not from the express language of the clause, but from other facts connected with the conveyance. It appears that the defendant had not, at the time, and he has never since had, any land upon which he could have built a mill, and exercised the privilege reserved, by drawing

water to it through the land conveyed; and it is thereupon contended, that he is entitled to build his mill upon this land, and carry on his business there, from necessity—that this right passes by the reservation, as a necessary incident; or, in other words, that the reservation is to be extended so as to include every thing which is necessary to the enjoyment of what is expressed.

It is a correct principle, that where any thing is granted, whatever is essential to the enjoyment of it passes. And so of things reserved. 11 *Co.* 52, *Richard Liford's case; Hobart's R.* 234, *Lord Darcy* vs. *Askwith.*

If it had appeared that there was no other land upon which a building could have been erected, this case might have come within the principle. The defendant having the right to draw water for the purpose mentioned, and it being necessary, in order to the exercise of that right, that he should occupy a portion of the land embraced in the deed, it must have been the intention of the parties that this right of occupation should accompany the right to take the water, although it was not so expressed. But the case negatives this, explicitly. The facts stated show, that it is not necessary, for the enjoyment of the right reserved to draw water from the pond, that the defendant should erect any mill upon the land, or enter into the occupation of any of it, except for the passage of the water from the pond through it. The right reserved, so far as the language of the deed expresses it, may be fully exercised by the erection of a mill on other land.

The defendant's counsel, however, contends for a much more enlarged construction of the term ' necessary,' and argues, that if the defendant was not, at the time, the owner of other land upon which he could erect a mill, he is entitled to build one upon the land embraced within his deed, notwithstanding there was other land on which a mill might be erected, and which, for aught the grantees appear to have known, he then owned, or might have purchased; and he

cites authorities to show that if one grants part of a field, to which the grantee can have no access except over land of the grantor, or of third persons, he shall have it over land of the grantor, although it is quite probable he could purchase a more convenient way of the third persons.

It is said, in *Comyn's Digest, Chimin D*, 3—" If a way be of necessity, the grantee of the land shall have it without a grant of the way; as if a man enfeoffs another of land which was encompassed by his other land, the feoffee shall have a way over the other land, without any grant." To which it is added, " So if there be not another way convenient"; for which 2 *Cro.* 170, and 2 *Rol.* 60, are cited. But this last position may well be doubted, if the term 'convenient' is used in its ordinary acceptation. The case referred to in Croke is very shortly reported, and the facts do not fully appear. It is stated that " upon demurrer the case was, The one sells land, and afterwards, the vendee, by reason thereof, claims a way over part of the plaintiff's land, there being no other convenient way adjoining; and, whether this was a lawful claim? was the question. And it was resolved without argument that the way remained, and that he might well justify the using thereof, because it is a thing of necessity; for otherwise he could not have any profit from his land : *et e converso* if a man hath four closes lying together, and sells three of them, reserving the middle close, and hath not any way thereto but through one of those which he sold, although he reserved not any way, yet he shall have it, as reserved unto him by the law; and there is not any extinguishment of a way by having both lands." *Cro. Jac.* 170, *Clark* vs. *Cogge.* It seems evident, from the opinion thus stated, that there had been a way before, and that this was necessary to the use of the land conveyed, and not merely more convenient than another way which might have been had.

In Rolle's Abridgment the doctrine is first laid down— " If I have a close surrounded by my own land on every

part, and I sell this close to another, he shall have a way to this close over my land, as an incident to the grant; for otherwise he cannot have any benefit of the grant"; and for this, the case just referred to in Croke James is cited, by the name of Clarke *vs.* Rugge. It is next said—"So if the close sold is not entirely enclosed by my land, but partly by the land of strangers; for he cannot go over the land of strangers"; but to this Rolle adds a '*quære.*' 2 *Roll. Abr.* 60. And it is to be remarked that Sergeant Williams, who lays down the principle first stated in Rolle, and cites him for authority, not only takes no notice of the paragraph last quoted, but denies "that in *all* cases, whenever a man has a close surrounded by the land of another, he is therefore entitled to a way over the land for necessity."

The case of necessity stated in Croke, where a man having four closes, lying together, sells three of them, reserving the middle one, and hath not any way thereto but through one of those which he sold, not having stipulated for any way across either, is certainly a "self created necessity," which could hardly be said to confer a right, if the three closes were sold to different persons at different times.

In *Holmes* vs. *Seely*, 19 *Wend. R.* 507, the abstract contains the following proposition—"Where the owner of land sells and conveys a portion thereof, which cannot be approached from a *public highway* but over the remaining lands of the grantor, the grantee is entitled to a *right of way* over such remaining lands." There is certainly matter in the opinion which goes to indicate that such might have been the view of the court in making the decision, but it is not clear that the court proceeded upon such a general principle. There was testimony in that case to show that from 1792 the owners of one lot had used a way over the other without interruption. Mr. Chief Justice Nelson said—"It is probable, from the facts in the case, that the defendant is entitled to a *private way* across the eighty acre lot, from the Bedford road to his small lot, for agricultural purposes, as a

*way of necessity.* Lewis McDonald formerly owned both of these lots, and in 1792 sold the small one to Smith, from whom the defendant derives his title. McDonald died in 1797, and the eighty acre lot fell to his brother James, from whom the plaintiff claims. The son of James, who was a witness, testified that there was no other way to the defendant's lot than over the *locus in quo.* If this was the situation of the lot at the time of the conveyance to Smith, and has thus continued ever since, a *right of way* followed as an incident to the grant." Reference is certainly here made to the continued use of a way across the plaintiff's land, for a period of forty years. How far this user went to establish the right of way, in the opinion of the court, does not very certainly appear. The authorities cited, although some of them contain loose *dicta,* will certainly not maintain the doctrine stated in the abstract.

In *Holmes* vs. *Elliot,* 2 *Bing. R.* 76, it was held, that " a way of necessity is limited by the necessity which created it, and ceases if, at any subsequent period, the party entitled to it can approach the place to which it led by passing over his own land." But Sergeant Williams, in the note before cited, which is referred to with approbation by Lord Ellenborough, in *Bullard* vs. *Harrison,* 4 *M. & Sel. R.* 393, says, "a way of necessity, when the nature of it is considered, will be found to be nothing else but a way by grant. It derives its origin from a grant. For there seems to be no difference where a thing is granted by express words, and where by operation of law it passes as incident to the grant. In the latter case it would be a superfluous and inoperative clause in the deed, to convey the incident by express words of grant, being only *expressio eorum quæ tacite insunt.*" If the superfluous clause which is understood, were in fact inserted in the deed, would it take the shape of a grant of a way over the land of the grantor until the grantee should purchase some other tract of land over which he might conveniently reach the premises granted,

or would the grant of the right of way be as general as the grant of the land itself, and not dependent upon the subsequent purchases of the grantee? In the present case, if the defendant had a right, after the execution of the deed, to erect and continue a mill upon the land, would that right cease when he should have purchased some adjacent land upon which a mill might be erected?

Without continuing this discussion further, it is sufficient to say that, as there existed at the time other lands adjoining, upon which a mill might be erected, and to which the water might be conveniently drawn, from the pond, for the purposes mentioned in the reservation, we are of opinion that the reservation does not authorize the defendant to erect a mill on the land embraced in the deed, notwithstanding he was not then the owner of such land adjoining. Whether he was in fact the owner, or had a contract for the purchase, or relied upon his ability to make a purchase when he should have occasion to use the right of water reserved, the grantees were not bound to know. It is not a matter of necessity, in order to the use of the water reserved, that he should occupy the land granted, with a mill, although it may be a matter of convenience.

*Judgment for the plaintiffs.*