## EMERSON *v.* WHITE.

If a witness state facts relative to the pedigree of a party, which he could not personally know, he must state the source from which he derives his information, that it may appear that it was derived from relatives, then disinterested and now deceased, or his testimony will be rejected.

To prove heirship in the collateral line, a party must show the descent of himself and the person last seized, from some common ancestor, and the extinction of all those lines of descent which would claim before him.

There is no presumption of death, or marriage, or the birth of children, or the reverse. The party who asserts that a person is dead without issue, must offer some evidence of those facts. If the events are remote, slight proof may satisfy a jury.

In construing deeds, effect is to be given to every part, if practicable. If the intention is clear, any part inconsistent with it will be rejected as false or mistaken.

A deed purports to be made by husband and wife, in right of the wife. Each of them owned several shares of the property conveyed. The number of shares described to be conveyed was sufficient to include the interest of both. *Held*, that the deed passed the shares of both husband and wife.

TRESPASS, for breaking and entering lot number thirteen in the Masonian Patent, so called, in the town of Moultonborough, and cutting timber trees.

The plaintiff proved that in 1807, the Masonian proprietors entered upon and surveyed the land, and afterwards assigned it, by vote, to the right of Richard Wibird. To connect himself with the heirs of Richard Wibird, he introduced the deposition of Daniel Austin, and a deed from Benjamin Penhallow and Susan, his wife, Mary Austin, by her attorney, and Thomas W. Penhallow, by his attorney, to the plaintiff, dated November 9, 1835. The deposition of Daniel Austin was as follows:

"I, Daniel Austin, of Portsmouth, in the county of Rockingham, and State of New Hampshire, of lawful age, depose and say, in answer to the following interrogatories, viz:

*Interrogatory 1st, by the plaintiff.* Please state your residence, age, and who were your parents, your mother's

maiden name, and when she died, and who were her parents?

*Ans.* My residence is at Portsmouth; my age is fifty-eight years; my parents were Mary and Daniel Austin; my mother's maiden name was Mary Penhallow, and she died about four years ago, at Portsmouth; her parents were Sarah and John Penhallow.

*Int. 2d.* Please state who were the brothers and sisters of your mother, and children of Sarah and John Penhallow, and whether they are now living, or either of them are now living, and if not, when your uncles Benjamin and Hunking and Thomas Penhallow died, and what children your uncle Thomas Penhallow left?

*Ans.* They were John, Samuel, Richard, Thomas, Hunking and Benjamin Penhallow, and Sarah Penhallow was their sister. They are all deceased; Benjamin and Hunking died at Portsmouth; the former about twelve years ago, the latter died about the year eighteen hundred and twenty-seven, and Richard also; Samuel died in Portsmouth within my recollection; Thomas left as children, Thomas W. Penhallow, now living, and Sarah Ann Penhallow, afterwards Mrs. Jeremiah Goodwin, now deceased; Richard was never married.

*Int. 3d.* Please state the maiden name of your grandmother, Sarah Penhallow, and who were her parents, and whether they are now living, and if not, about what time they died?

*Ans.* Her name was Sarah Wentworth; her parents were Elizabeth and Hunking Wentworth.

*Int. 4th.* Please state the maiden name of your great-grand-mother, Elizabeth Wentworth, and who were her parents, and whether your great grandmother is dead, and her parents are dead, and about the time they died.

*Ans.* Her maiden name was Elizabeth Wibird; her parents were Richard Wibird and Mrs. Due; (he married a widow, I do not remember her christian name.) My great

grandmother is dead; her parents, also, are dead; as to the time, I am uncertain.

*Int. 5th.* Please state what paintings you have in your possession of the likenesses of your ancestors, and how you obtained the knowledge that they were your ancestors?

*Ans.* I have the likeness of my great great grandmother Wibird, also of my great great uncle, Richard Wibird, junior. I had the likeness of my great great uncle, Thomas Wibird, but it is loaned; and also have the likeness of my great, great, great grandmother, Penhallow. I have the ordinary evidence which families have of the pictures of their ancestors. Ever since my recollection they have been in the family as the pictures of my ancestors, and when I was a boy, my grand mother pointed out to me the pictures as being what I have already designated.

DANIEL AUSTIN."

The defendant's counsel objected, that there was no competent evidence of the pedigree, inasmuch as the witness did not state from whom he obtained his information; but the objection was overruled. The deposition was taken upon notice, but without an appearance by the defendant.

The deed referred to was as follows:

" Know all men by these presents, that we, Benjamin Penhallow, Esquire, Susan Penhallow, the wife of the said Benjamin Penhallow, in her right, Mary Austin, widow, and Thomas W. Penhallow, merchant, all of Portsmouth, in the county of Rockingham, and State of New Hampshire, for and in consideration of the sum of forty-one dollars and sixty-seven cents, to us in hand before the delivery hereof, well and truly paid by Samuel Emerson, Esquire, of Moultonborough, in the county of Strafford and State of New Hampshire, the receipt whereof we do hereby acknowledge, have granted, bargained, sold, quitclaimed and conveyed, and by these presents do grant, bargain, sell, quitclaim and convey unto the said Samuel Emerson, and his

heirs and assigns forever, thirty-nine forty-eighth parts of a certain undivided tract or parcel of land, situate in Moultonborough, in the county of Strafford and State of New Hampshire, being numbered thirteen, in the third range, in the third division of lots in said Moultonborough, the whole lot containing about seventy-five acres. One forty-eighth part of this tract or parcel of land, as above described, which was the share of Sarah Penhallow of Portsmouth, single woman, is not hereby conveyed, and is in common and undivided. And the thirty-nine forty-eighth parts, as above mentioned, are conveyed as follows, to wit: nine forty-eighth parts and two-thirds are hereby conveyed by Mary Austin, widow ; one forty-eighth part is hereby conveyed by Thomas W. Penhallow, merchant; and the remainder of the thirty-nine forty-eighth parts thereof are conveyed by Benjamin Penhallow, Esquire, and Susan Penhallow, his wife. To have and to hold the said granted premises, with all the privileges and appurtenances to the same belonging, to him, the said Samuel Emerson, Esquire, his heirs and assigns, to his and their only proper use and benefit forever. And we, the said Benjamin Penhallow, Susan Penhallow, Mary Austin, and Thomas W. Penhallow, for ourselves, our heirs, executors and administrators, hereby covenant to and with said Samuel Emerson, and his heirs and assigns, to warrant and defend the said granted premises against all claims or demands of any person or persons claiming by, from or under us.

In witness whereof we, the said Benjamin Penhallow, Susan Penhallow, Mary Austin, and Thomas W. Penhallow, have hereunto set our hands and seals, this ninth day of November, in the year of our Lord one thousand eight hundred and thirty-five.

BENJAMIN PENHALLOW, (L. S.)

SUSAN PENHALLOW, (L. S.)

MARY AUSTIN, (L. S.)
    By her attorney,
      BENJAMIN PENHALLOW.
THOMAS W. PENHALLOW, (L. S.)
    By his attorney,
      BENJAMIN PENHALLOW.
Signed, sealed and delivered, in presence of us—
      SUSAN STEVENS PENHALLOW,
      JOHN BENNETT.

State of New Hampshire, Rockingham county, ss., Portsmouth, Nov. 9th, 1835.   Then the above named Benjamin Penhallow, Susan Penhallow, Mary Austin, by her attorney, Benjamin Penhallow, and Thomas W. Penhallow, by his attorney, Benjamin Penhallow, personally appearing, acknowledged the above instrument, by them subscribed, to be their voluntary act and deed, before me—
      JOHN BENNETT, Justice of the Peace."

The plaintiff traced the title of Hunking Penhallow to Susan Penhallow, the wife of Benjamin, but failed to prove any authority in the attorney to convey the right of Mary Austin.   The plaintiff's counsel contended that in the absence of proof that the others left lawful descendants, it would be presumed that the Wibird right descended to Benjamin, Hunking, Mary, and Thomas, and that the deed of November 9, 1835, passed the right of Benjamin, as well as that of Hunking, which had been conveyed to his wife. The court, for the purposes of the trial, overruled this position, and instructed the jury that the plaintiff had shown title to twenty-five forty-eighths of the lot.

A verdict being rendered for $175, the defendant moved to set the same aside on account of the rulings and instructions aforesaid.

*L. D. Sawyer,* for the defendant.

The objection to the evidence of pedigree is well taken. The rule of evidence is restricted to the declarations of deceased persons, who were related, by blood or marriage, to the ancestor, and who had no interest to misrepresent; and a competent knowledge on the part of the declarants is an essential prerequisite.· 1 Greenl. Ev. §§ 103, 129; *Waldron* v. *Tuttle*, 4 N. H. Rep. 378; *Great Falls Man. Co.* v. *Worcester*, 3 Foster's Rep. 462.

When one claims as heir, it is necessary to prove, 1st, affirmatively, their relationship through the common ancestor; 2d, negatively, that no other descendants from the same exist to impede the descent. No such evidence was offered. *Vowles* v. *Young*, 13 Ves. 147; *Whitelock* v. *Baker*, 13 Ves. 514; *The King* v. *Eriswell*, 3 D. & E. 723; *Mornood* v. *Wood*, 14 East, 330; *Weeks* v. *Sparke*, 1 M. & S. 689.

The plaintiff shows no possession or right of possession, in himself or his grantors, and the Penhallow deed conveys no title. *Anderson* v. *Nesmith*, 7 N. H. Rep. 167; *Dame* v. *Wingate*, 12 N. H. Rep. 291.

*Emerson, pro se,* and *J. Bell,* for the plaintiff.

No question arises in relation to the particular portion of the demanded premises for which the verdict was directed. That depends, in part, upon evidence which is not reported, and if for too much, the excess may be remitted.

I.   The testimony of Daniel Austin was properly admitted, on the question of pedigree. He testified, in substance, to the descent of his mother, and of the Penhallows, the children of Sarah Penhallow, who were known to him personally as her brothers and sister, from Richard Wibird. His grandmother, Sarah Penhallow, had, as he testifies, pointed out to him a picture, preserved in the family, as that of his great great grandmother, Wibird, together with those of other relatives. And if in any part of his statement of the pedigree of his relatives, whom he could not have personally known, he cannot be considered as having reference

to the information thus communicated to him, which, as we contend, is a fair inference from his whole deposition, he must at least be understood to testify from hearsay in the family, or from general repute in the family, and this would be competent evidence. And at all events, the particular objection taken to the testimony, which was that the witness did not state from whom he obtained his information, cannot be sustained in point of law. See 1 Greenl. Ev. § 103; *Doe* v. *Griffin*, 15 East, 293; *Pancoast* v. *Addison*, 1 H. & J. 350; 1 Phill. Ev. (3d Ed.) 231.

It is on this ground, substantially, that genealogical tables, entries in bibles, &c., whose particular authors are frequently unknown, are received as evidence. 1 Phill. Ev. 231; *Monkton* v. *Attorney General*, 1 R. & M. 147.

Again, if the witness has stated any of the facts in relation to this pedigree generally, without referring to his sources of information, as it often happens with witnesses, the defendant had a right to cross examine him upon the subject, and not having done so, should not be heard to suggest that those sources were insufficient.

II. There was no error in the ruling of the court, that the jury could not, in the absence of any evidence, presume that the children of Sarah Penhallow married and left children, and that the plaintiff could not be required to establish the negative of these propositions. We understand the very point to have been decided against the doctrine contended for by the defendant, in *Doe* v. *Walley*, 8 B. & C. 25. " In order to raise the objection," say the court, " two affirmatives must be presumed, viz, that they, (the collateral relatives, who were not accounted for,) must have married and left issue, which would be very unreasonable." And on the same principle is founded the decision in *Crowell* v. *Eveleth*, 15 Mass. Rep. 305, in which it was held that a stranger to the title, (in which position are the defendants in the present case,) cannot insist on this negative description of proof. In that case the defendants were not requir-

ed to show the death without issue of Skinner, a collateral relation of the defendant's ancestor, and who, if living, would have been entitled to share in the inheritance. " The tenant cannot," say the court, " defend his possession merely by the possibility that another is living who has a title to part of the land demanded." See, also, *Sandys* v. *Sandys*, 1 Q. B. 316, cited in 1 Saund. Pl. & Ev. 1005 ; *McComb* v. *Wright*, 5 Johns. Ch. Rep. 263 ; *King* v. *Fowler*, 11 Pick. 302.

And though it is stated in several elementary works, that a plaintiff in ejectment must show that all collateral branches descended from the same common ancestor are extinct, referring, as the only authority asserting the rule, to a manuscript case, *Richards* v. *Richards*, 15 East, 294, note. Yet that case, if of any authority, was, as we conceive, intended to apply only where there is a legal presumption that such branches are in existence, they having been shown to be so in recent periods.

In the present case, the presumption of the continuance of life does not apply to any of the descendants of R. Wibird, who were not shown to have been living within seven years. *Doe* v. *Jeffers*, 6 East, 84 ; *Doe* v. *Deakin*, 4 B. & A. 433.

III. The charge of the court, that the right of Benjamin Penhallow, as well as of his wife, passed to the demandant by their deed, was correct. This right passed by estoppel, if not conveyed in terms by the deed. *Rangely* v. *Spring*, 15 Shep. 127.

The court will notice, as an historical fact, that lands in this place are within the Masonian Curve.

*Sawyer*, in reply.

It is not an historical fact that a particular lot is within the Masonian line ; that is a fact to be proved.

To make Austin's evidence admissible, he must state how he knows what he tells. If the plaintiff does not show how

the witness gets his information, he, and not we, must rest on presumption. He is to recover on the strength of his proof, not on the weakness of ours.

BELL, J. The first question presented by this case is, whether the evidence of pedigree was competent, the witness having omitted to state from whom he derived his information. Many of the facts stated in the deposition of the witness, Austin, are of a kind of which he could have no personal knowledge or recollection. He says nothing of the sources of his information, except what he states as to certain family pictures. These are stated to have been from his childhood in the family, and regarded as pictures of some of his ancestors, and he says that when he was a boy, his grandmother pointed out to him these pictures as the likenesses of the relations he mentions. These circumstances serve to authenticate his statements as to these relatives. The only material fact which they show is that Mrs. Wibird was his great, great grandmother. They do not show that she was the wife of Richard Wibird, under whom the plaintiff claims. We can easily imagine that all the facts stated by the witness might be derived from the grandmother, or other members of the family, but nothing of this kind is stated. They might have been derived from other sources, and unless derived from other relatives, evidence of this kind is not admissible. If derived from parish registers, wills, monumental inscriptions, family records, or history, it would be incompetent, for though these are deserving of more confidence than mere family tradition, yet as the originals themselves may be produced, any statements founded on them fall into the class of merely secondary evidence.

This question was considered in this court, in the case of *Waldron* v. *Tuttle*, 4 N. H. Rep. 378 ; and the rule was then laid down by Chief Justice *Richardson*, as follows : " The declarations of deceased relatives, who had at the time no

interest to misrepresent, are evidence to prove a pedigree." The cases there cited fully sustain the qualifications with which the rule is expressed, and many other cases support the same doctrine. *Vowles* v. *Young*, 13 Ves. 140; *Doe* v. *Ridgeway*, 4 B. & A. 53; *Crease* v. *Barrett*, 16 M. & R. 53; *Doe* v. *Barton*, 2 M. & R. 28; *Higham* v. *Ridgeway*, 10 East, 120; *Davis* v. *Sawndes*, 1 Bing. N. C. 157; *Davis* v. *Selby*, 12 L. J. N. S. 506; and 7 Scott N. R. 101; *Cosey* v. *O'Shaughnessey*, 7 Jur. 140; *Slein* v. *Bowman*, 13 Pet. 209; *Chapman* v. *Chapman*, 2 Conn. Rep. 347; *Fosgate* v. *Herkimer Co.*, 12 Barb. 352; *Jewell's lessee* v. *Jewell*, 7 Pet. 219; *People* v. *Ins. Co.* 25 Wend. 205.

Here nothing appears to show that the information upon which the statements of the witness were made, were derived from relatives, nor, if so, whether they were living or dead at the time his evidence was given, or whether they were indifferent as to its effect, or interested to misrepresent. The admissibility of the testimony depended upon its being shown that it was derived from relatives, then disinterested and now deceased, and it avails nothing to the plaintiff that the defendant had an opportunity to be present and to cross examine the witness if he pleased. The burden was not upon him to show that the testimony was not derived from proper sources. This testimony was incompetent, and should have been rejected.

It was insisted on the trial, that in the absence of proof on the subject, it should be presumed that four of the children of John and Sarah Penhallow died without heirs, and their rights descended to the remaining children. The court ruled otherwise, we think correctly. We are not aware that there is any presumption of fact from the mere absence of evidence, that a person did or did not die childless. Ordinarily the party who asserts that there were or were not descendants of a person deceased, is bound to produce some evidence to show his assertion probable. Slight evidence might be sufficient to turn the scale, but where none is pro-

duced, either direct or circumstantial, the only result to which a jury can arrive is, that the party has failed to prove an important part of his case.

Strong negative evidence against the existence of any such presumption as is contended for, is to be found in the fact that no mention of it is found in any of the books of evidence, so far as we have discovered, though the occasions for relying upon it must have been frequent.

The rule on this subject is found better stated in 1 Saund. Pl. & Ev. 457, than in any of our elementary books. It is there said, " To show the heirship of the claimant, he must prove his descent from the person last seized, when he claims as lineal heir, or the descent of himself and the person last seized from some common ancestor, or at least from two brothers or sisters, if he claims collaterally, together with the extinction of all those lines of descent which would claim before him. This is done by proving the marriages, births and deaths necessary to complete his title, and showing the identity of the several parties. Adams, 250. The plaintiff must prove that all the intermediate heirs between himself and the ancestor from whom he claims, are dead without issue. *Richards* v. *Richards*, 15 East, 294, n. It is a maxim that he who asserts the death of another, who was once living, must prove his death, whether the affirmative issue be that he be dead or living. *Wilson* v. *Hodges*, 2 East, 312.

The rule is stated in very similar terms in Adams on Eject. 253 ; 1 Greenl. Ev. 254 ; 3 Phill. Ev. 284 ; 2 Steph. N. P. 1472. These authors all cite and rely on the case of *Richards* v. *Richards*, *supra*, which fully sustains the position. It is supported by the case of *Doe d. Banning* v. *Griffin*, 15 East, 293, where it was held that proof by an elderly person, one of the family, that another person of the family went to the West Indies many years before, and according to the repute of the family died there, and that she had never heard of his being married, is *prima facie* evi-

dence that the party died without lawful issue; and by the case of *Doe d. Oldham* v. *Walley*, 8 B. & C. 22, where it was held that after the lapse of one hundred years, in the absence of evidence to the contrary, the death of a party without issue might be presumed.

In *Clark* v. *Trinity Church*, 5 W. & S. 266, it was held that where the title of the plaintiff in ejectment was to accrue on the dying of another person without issue under twenty-one, he is bound to show in ejectment that both these events have happened, and if he give evidence only of his death under twenty-one, it is not sufficient. 4 U. S. Dig. 619, p. 347.

In the case of *Cranch and Wife* v. *Eveleth*, 15 Mass. Rep. 305, it appeared that the demandants entered, in 1775, upon the decease of the wife's father, who died seized of the estate, and they continued in possession until 1785. The action being brought in 1813, before the statute of limitations became a bar, the demandants must recover, unless their title was disproved by the tenant. It appeared that the deceased had a son, who has not been heard of since 1777. The tenant offered to prove declarations of members of the family, deceased, that he was living since that time, and that when he died he left two children, who inherit two thirds of the estate in question. The court held the evidence incompetent to maintain the defence for the tenant, for he claimed no title under the absent children. It is evident that the plaintiffs having been themselves actually seized of the estate, were entitled to recover it against any intruder, who could not show in himself, or those under whom he claimed, a better title. The evidence offered had no tendency to disprove their seizin, on which they relied. It was not decided that the evidence, if competent upon the issue, would or would not be otherwise admissible. No question was raised as to the source of the witness' knowledge, and no presumption was made or insisted upon. This

case, then, yields no supports to the positions of the plain-
tiff.

In *Mc Comb* v. *Wright*, 5 Johns. Ch. 263, it appeared upon
the report of a master, that two children of a party deceased
had not been heard of for more than forty years, and it was
held that upon this fact a court or jury might presume they
were dead without issue. This case cannot apply to one
like the present, where there is an entire absence of evi-
dence on the subject. It shows that slight evidence may
be sufficient.

In *King* v. *Fowler*, 11 Pick. 302, it was held that where a
demandant claimed title under one of the six children of a
former owner of the land, evidence that inquiries had been
made in regard to the other five children, and that nothing
had been heard of them for seventy years, was held suffi-
cient to justify a jury in finding that they died without
issue.

In *Doe dem. George and Wife* v. *Jesson*, 6 East, 80, the
ancestor died leaving a son and a daughter, one of the plain-
tiffs. The son, then about ten years of age, was sent to
sea by the parish, and left on a second voyage, and has not
been heard of since. Lord *Ellenborough* says, the presump-
tion of the duration of life with respect to persons of whom
no account can be given, ends at the expiration of seven
years from the time when they were last known to be living.
Therefore, in the absence of all other evidence to show that
he was living at a later period, there was fair ground for a
jury to presume that he was dead at the end of seven years.
This case is far from proving that a jury would be warrant-
ed in presuming a person to be dead at the end of seven
years, in the absence of all proof, where no inquiry had been
made whether he had been heard from or not.

In *Doe dem. Loyd* v. *Deakin*, 4 B. & A. 433, it was held
that the fact of a tenant for life not having been heard of for
fourteen years by a person residing near the estate, though
not a member of his family, is *prima facie* evidence of the

death of a tenant for life. It would be, perhaps, a more correct statement of the decision to say that it was evidence competent to be laid before the jury as having a tendency to prove the death of the tenant. It is a different case from the present, where there is, at most, an absence of all proof or inquiry.

In *Doe dem. Oldham* v. *Walley*, 8 B. & C. 22, in order to prove that F. Walley was heir to T. Walley, the testator, a settlement was produced, made in 1689, by which it appeared that T. Walley had several brothers, of whom E., the grandfather of F. Walley, was the youngest. No evidence was given to show what had become of the other brothers, or that they died without issue, but wills of some members of the family, made after the date of the marriage settlement, were produced, and they did not mention any brothers, except the grandfather of the testator, and the grandfather of F. Walley. The judge said that, in the absence of any evidence to the contrary, *the jury might presume that they died without issue.* *Tenterden*, C. J. It must, at all events, be admitted that the death of the grandfather's brothers might be presumed, and then, in order to raise the objection, two affirmatives must be presumed, viz: that they did marry and did leave issue. I think that would be very unreasonable, and that the direction of the learned judge was right.

This case, as it is stated, is in conflict with all the other decisions which have been found. The case was properly decided, agreeably to all the other cases, but not upon the ground stated by the reporter. It was not a case to which the doctrine of presumption, in the absence of evidence, could be applied. There was evidence laid before the jury competent for their consideration, tending to show the probability of the decease of the brothers, and from which they might properly infer their deaths. And the question should have been, and probably was, merely as to the sufficiency of that evidence, that is, the omission of their names in wills,

where they would naturally be found, if living, to warrant the jury in finding their deaths. It was not necessary to resort to any presumption.

In *Sandys* v. *Sandys,* 1 A. & E. Q. B. 316, note, the right of nomination to a fellowship being in dispute between two parties, claiming under the same grant, the court directed an issue to try "whether the plaintiff had a better right than the defendant to nominate." On the trial, it appeared that the defendants had nominated for nearly twenty years, and that vacancies occurred about once in five years. The right of nomination was limited by the grant to heirs male of E., with limitation over in default of such heirs. The eldest son of E. had three sons, and the plaintiff was lineally descended from the third. In 1634, the two elder sons were living, and one had had, then living, issue male. No further evidence was given. It was held that on the issue directed, the plaintiff might recover upon his evidence, without showing that the two elder branches were extinct.

This case appears to have been decided upon the form of the issue, which was, as stated by one of the judges, " to try which of two claimants had the better right. The plaintiff proves a right, the defendant proves none." " A right of presentation " was said to be " not like the title to land. No seizin is required. The right claimant may present, after several presentations, by a wrong one."

The case evidently can be no authority in a real action or an action of trespass, since there the party in possession is not to be disturbed, unless it be by one who shows a better right, while here the judgment is rested upon the point that, *under the issue,* the fact of repeated nominations, made by the defendant, was not material. By *Patteson, J.,* it was said " the issue was, in substance, to inquire which is more nearly related to the ancestor. The plaintiff shows himself to be a lineal descendant, and he is not bound to negative the existence of any prior claimant." If the doctrine contended for by the plaintiff had been that held by

the court, it would be immaterial what was the form of the issue, since the presumption, if there were such, that all nearer relatives were dead without issue, in the absence of evidence respecting them, would govern the case, whatever might be the form of the issue.

From the English cases, then, referred to, we conclude that the rule of the law is, that a party who alleges the decease of a person is bound to offer such evidence as may satisfy a jury that he is probably dead. If he asserts that a party died childless, he must offer some proof of that fact. And that there is no presumption of death, or marriage, or of the birth of children, or of the reverse. A jury may infer either of these from slight evidence, but the law makes no presumption about them.

The same principle is supported by the cases in New York. In the first of these, *Jackson dem. the People* v. *Etz,* 5 Cow. 314, it was held that in ejectment for escheated land, the jury should be satisfied that the tenant, whose lands are claimed as being escheated, died without heirs, and, in such case, proof that a man's intimate acquaintances, for several years, never heard him speak of his family, father, mother, wife or children, is *prima facie* evidence that he has no heirs, if the place of his birth be unknown to them, and there appears no clue to better evidence ; but this may be overthrown by very slight proof of heirs.

In the *People* v. *Fulton Fire Ins. Co.,* 25 Wend. 205, it is said by *Walworth,* Ch., it is only necessary for the people of the state to give general evidence, showing that no persons have been found to claim the premises as heirs at law of the person last seized, leaving it for those who wish to show a title out of the State, either in themselves or a stranger, to prove that such heirs do, in fact, exist; and by *Verplank,* Senator, proof of the fact of there being no known heirs of the deceased, may well raise a presumption that the inheritable blood has failed, provided that such proof be direct and positive, founded upon inquiry, adver-

tisements, personal family knowledge, or the actual declaration of the person last seized, or of those from whom his title descended. He doubts if mere hearsay reputation of the general fact of defect of heirs is competent.

In *Fosgate* v. *Herkimer Co.*, 12 Barb. 352, it was held that, in the action of ejectment, no presumption of title in the demandant can be indulged. The plaintiffs, claiming three-fourths of the estate as tenants in common, and one-fourth as heirs of their co-tenant, are bound to show the death of that co-tenant, and that he died without issue, and that they succeeded as heirs to his interest.

The third question raised by the case is, whether a deed of land, executed by husband and wife, purporting to convey it in her right, is valid to pass the whole, if it appears that the husband was severally seized of a part and the wife of a part. And we think that, in such a case, the deed should be construed to pass the whole estate, both of the husband and wife, upon the familiar principles that deeds are to be construed most favorably, in case of doubt, for the grantee; *Canning* v. *Pinkham*, 1 N. H. Rep. 353: *Tenny* v. *Beard*, 5 N. H. Rep 58; *Cochecho Co.* v. *Whittier*, 10 N. H. Rep. 305; and that deeds are to be construed in such a manner as to pass the estate intended, if it can be done consistently with the rules of law. Touch. 87; 4 Cruise's Dig. 263; *Chamberlin* v. *Crane*, 1 N. H. Rep. 65; *Cochecho Co.* v. *Whittier*, 10 N. H. Rep. 305.

There are many cases where effect is given to deeds, not according to their terms, but in such way as to give them an effective legal operation. Thus where there are any words in a deed that evidently appear to be repugnant to the other parts of it, and to the general intention of the parties, they will be rejected as inadmissible. Touch. 87; 2 Black. Com. 379; 4 Cruise's Dig. 261; *Jackson* v. *Loomis*, 18 Johns. 81; *Jackson* v. *Marsh*, 6 Cowen 281; *Wade* v. *Howard*, 6 Pick. 492; *Webster* v. *Atkinson*, 4 N. H. Rep. 121.

Upon the same principle " the general words in the premises of a deed or grant may be corrected, restrained and explained by the habendum, or an exception, or by a condition annexed, or by the context or recital of the deed, or by synonymous expressions or clauses." Com. Dig. Parols. Prest. Touch. 88; 2 Black. Com. 379; *Sally* v. *Forbes,* 4 Moore 448; *Mills* v. *Catlin,* 22 Verm. 98; *Deering* v. *Longwharf,* 25 Maine Rep. 50.

This principle, as it applies to the description of real estate, is thus stated by *Parsons,* C. J., in *Worthington* v. *Hillyer,* 4 Mass. Rep. 196, " if the description is sufficient to ascertain the estate intended to be conveyed, although the estate will not agree to some of the particulars in the description, yet it shall pass by the description ;" and it is adopted, in similar terms, by this court, in *Lyman* v. *Loomis,* 5 N. H. Rep. 408. It is better expressed by *Sutherland,* J., in *Jackson* v. *Moore,* 6 Cowen 717, thus: " In construing deeds, effect is to be given to every part of the description, if practicable ; but if the thing intended to be granted appears clearly and satisfactorily from any part of the description, and other circumstances of description are mentioned, which are not applicable to that thing, the grant will not be defeated, but those circumstances will be rejected as false or mistaken. *Roe* v. *Vernon,* 5 East 41 ; *Doe* v. *Galloway,* 5 B. & A. 43 ; *Lamb* v. *Reaston,* 5 Taun. 207; *Bosworth* v. *Sturtevant,* 2 Cush. 392 ; *Wing* v. *Burgess,* 1 Shep. 111, are cases, among many others, sustaining this principle. Many cases, bearing on the question, are collected in the case of *Drew* v. *Drew,* 8 Foster's Rep. 489.

In *Vose* v. *Bradstreet,* 14 Shep. 156, two grantors convey certain lands not otherwise described than as " land situate in A., conveyed to us by G., by deed dated May 25, 1836, recorded book 92, page 51." The deed found at page 51 of volume 92, was dated in 1835, and was made to one of the grantors only. The land intended was held to be well ascertained by the reference to the record, and the deed was

not affected by the error as to the date of the deed referred to, nor by the mistake as to the grantee.

This case has a strong similarity to the one before us. Here there is no question as to the premises designed to be conveyed by the husband and wife. They are described as the remainder of the $\frac{39}{48}$ parts of the land described, which would include the shares both of the husband and wife. But it is said the deed should be restricted to the land of the wife, because the deed says it is conveyed by husband and wife in right of the wife. But, we think, this mistake in the deed cannot be allowed to defeat the clear and manifest intention of the parties. This qualification must be understood as confined in its application to the lands of the wife.

The jury were instructed that the plaintiff had shown title to $\frac{25}{48}$ parts of the demanded premises. The case is briefly stated, but we are unable to perceive how this ruling can be supported without recourse to presumption to supply the want of proof. No account is given of the families of Richard Wibird or Hunking Wentworth, which renders it probable that this estate was all inherited by the Penhallow family; and that supposition seems entirely irreconcileable with the account of the shares conveyed to the plaintiff by the deed under which he claims. This inquiry need not be further pursued.

*Verdict set aside.*